ALLEN FRYE and Another v. HUGH L. WAKEFIELD and Others.[1]

March 5, 1909.

Nos. 15,970—(220).

**Commission for Sale of Real Estate.**

> In an action to recover commissions alleged to have been earned by the production of a purchaser for certain real estate, it appeared that the owner gave the proposed purchaser an option to purchase the land if the holder of a prior existing option failed to avail himself of his privilege to purchase. The sale was made to a party not named in the first option, but who claimed an interest therein and the right to purchase under it. *Held*, that the finding of the jury that the party to whom the sale was made was not entitled to purchase under the option is not sustained by the evidence.

Action in the district court for Hennepin county to recover $5,872, commission for producing a purchaser for certain lands. The lands were owned jointly by the defendants, Hugh L. Wakefield, Ferdinand Leutz, John D. Gray, Edward T. Jones, E. W. Brown and Maurice D. Sanger, but the title stood in the name of defendant Wakefield. One Frank A. Little gave O. J. Hawkinson an option on the land, and subsequently plaintiffs, with whom the lands had been listed by defendant Sanger, found William G. Hyslop who was given an option to buy the land in case Hawkinson failed to take it. Plaintiffs were to have a commission of one dollar per acre out of which Sanger was to receive thirty cents per acre. Defendants, except Sanger, who answered separately, denied that the lands had been listed with plaintiffs. Hawkinson failed to avail himself of his option; Hyslop at once offered $5 per acre and the lands were sold to Little at $4.50. Plaintiffs demanded one dollar per acre for securing the purchaser Hyslop.

The case was tried before Holt, J., and a jury which returned a verdict in favor of plaintiffs for the amount asked, less thirty per cent. which by agreement was to be paid to Sanger. From an order denying the motion of defendants, except Sanger, for a new trial or judgment notwithstanding the verdict, defendants, except Sanger, appealed. Reversed and new trial granted.

[1] Reported in 120 N. W. 35.

*C. A. Bucknam, Harris Richardson* and *Harold C. Kerr,* for appellants.

*William H. Hallam* and *Wickham & Farr,* for respondents.

ELLIOTT, J.

In an action to recover commissions alleged to have been earned under a contract to furnish a purchaser for certain real estate, the plaintiffs recovered a verdict, and certain of the defendants appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Upon this appeal numerous errors are assigned; but we find it unnecessary to consider many of the questions which have been discussed, as we are satisfied that a new trial must be granted because of the insufficiency of the evidence to sustain one of the allegations essential to the plaintiffs' recovery.

In 1902 the defendants purchased certain wild lands, and for purposes of convenience in making sales the title thereto was taken in the name of Wakefield, one of their number. The parties had definite interests in the lands in proportion to the amount of money advanced by each towards the purchase price. After the title had been vested in Wakefield it was agreed among the associates that the lands, when sold, must net them four dollars per acre, and that any one of the owners who succeeded in finding a purchaser at a higher price might retain the excess as his commission. Wakefield was engaged in other business, and appointed Nichols to represent him in his absence in all matters connected with sales of the lands. About August 10, 1907, Wakefield listed certain of the lands with Little at a net price of $4.50 per acre, and Little set out to find a purchaser at a price which would give him a profit.

Negotiations with various parties, including Frye and Gillies, the respondents herein, resulted in an agreement by a party named Hawkinson to purchase the land in question at six dollars per acre. By this time several parties had become interested, each of whom was maneuvering for a share of the profits. When Hawkinson agreed with Little to take an option to purchase the land at six dollars per acre, he drew his check for $1,000, payable to Little, and handed it to him as earnest money. Hawkinson knew that the title of the land was in Wakefield, but apparently knew nothing of the price which Wakefield

had made to Little. Little indorsed the check and sent it to Nichols, who was representing Wakefield. Hawkinson had arranged that the contract should express a consideration of seven dollars per acre, and, this becoming known to parties whom he expected to go into the transaction with him, they refused to proceed, and Hawkinson stopped payment on the $1,000 check. Little then went to Osseo, Wisconsin, where Hawkinson resided, and met Hawkinson, Frye, and other parties interested in the deal. Some arrangement was there made which resulted in the payment of the check. Little then returned to Minneapolis, where he saw Nichols and closed the transaction by the execution of a written contract which gave Hawkinson the right to purchase the land at any time prior to and including October 1, 1907. Nichols desired that this option contract should run to Little, instead of Hawkinson; but at Little's instance it was made out in the name of Hawkinson.

Before the expiration of this option Frye and Gillies, who were doing business under the name of the Western Land Company, found a party by the name of Hyslop who was willing to purchase the land, and further negotiations with Nichols resulted in the giving by Nichols to Hyslop of an option which entitled him to purchase the land if the Hawkinson option was not consummated. All parties understood that Hyslop's option was junior and subordinate to that of Hawkinson. At this time Nichols understood that the so-called Hawkinson option was for the benefit of Little, Hawkinson, and their associates, and when Little appeared on the last day with the money a contract was executed to him for the purchase of the land. On the following day Hyslop appeared, and was informed that the lands had been sold to Little under the Hawkinson option. Frye and Gillies then claimed a commission, on the theory that they had produced Hawkinson as the purchaser, and were referred by Nichols and Wakefield to Little.

The outcome of the complicated transaction was this action to recover a commission alleged to have been earned by the production of Hyslop as a purchaser under an express contract claimed to have been made by Sanger, one of the parties who owned the land, on behalf of the owners. The trial court instructed the jury to find whether the owners of this land had formed a partnership for the purpose of its sale, and that the plaintiffs could not recover if the land had been sold

to Little in pursuance of the original option, which stood in the name of Hawkinson. The jury found that Little had no interest in that option which entitled him to purchase under it.

This finding was so against the weight of the evidence that the trial court should have set aside the verdict and awarded a new trial. Early in August, 1907, Wakefield offered to sell the land to Little for $4.50 per acre, and with this understanding Little authorized one Swickard to sell it for five dollars per acre. Little was not then an agent for Wakefield. Swickard met Frye and one McKenney in North Dakota, where the land was situated, and offered the land to them for $5.50 per acre. Hawkinson had gone to Dakota with Frye for the purpose of examining lands, and as a result of the consultation between Little and Hawkinson the latter agreed to purchase the land at six dollars per acre, the contract to state the purchase price at seven dollars per acre, to enable him to unload it upon his associates at an advance of one dollar per acre. Everything seems to have been understood, except that each of the parties had some arrangement by which he was to make a secret profit out of the others. Hawkinson must have understood that he was acquiring his rights through Little, because he made the check for $1,000 payable to Little. Little immediately wrote to Nichols, informing him of the transaction, and inclosing the check which was to be deposited as earnest money. From this letter it appears that Little understood that he was purchasing the land for $4.50 an acre and reselling it at an advance to Hawkinson. He informed Nichols that Wakefield had told him that the land was for sale at that price, and that Swickard had wired him that he had a buyer (Frye) at $5.50 per acre "to us." It thus appears that Swickard also understood that Little was buying the land and reselling it at $5.50 per acre. In this letter Little informed Nichols that the sale "is to Hawkinson and others at Osseo, Wis.,". and that the purchasers require that "the contract from you to them shall state a price of seven dollars an acre, and the extra one dollar above the six dollars to be acknowledged as paid in the first payment, as they are turning the land to others at seven dollars, and want the contract to show same cost." "We especially desire," he wrote, "that you do not make the fact known to any of these parties that we are getting one dollar an acre above the net cost price to us of $4.50, as the agents presume that we

are making only fifty cents an acre, and it appears that these agents are also making another commission by placing the land at seven dollars. * * * Should any point arise later that E. R. Swickard, of Dickinson, would address you in this matter, please consider him as one of the principals."

In the dealing with Nichols, who in legal effect was Wakefield, Little thus identified himself as a principal, and referred to Frye and McKenney as agents. Nichols testified that he regarded Little as the buyer. Wakefield also testified that the sale was made to Little, and that he considered that they were bound to sell the land to him at $4.50 per acre. When Hawkinson's check was not paid, Little and Frye went to Wisconsin to see him, and the visit resulted in the check being paid. Immediately thereafter Little saw Nichols, and, as Nichols testified, informed him "that he had sold to Frye at $5.50, who had sold to Hawkinson, who had sold to Mr. McKenney and other parties at seven dollars, and that the contract would have to issue at seven dollars."

When these parties met with Hawkinson at Osseo, Hawkinson informed them that he could not carry the deal through alone, and the evidence shows very conclusively that it was agreed that all the parties present should join in the transaction and carry the deal through. Both Little and Nichols testified that the option was made out to Hawkinson at the request of Little, although Nichols wished to make it to Little, as he had received the check from him, and regarded him as the purchaser. The inevitable inference is that Little considered himself as associated with Hawkinson and that he had an interest in the option. Nichols believed that Little was the purchaser and the deal was subsequently closed with him. When the Hawkinson option was taken up and the contract made with Little, the $1,000 which had been deposited as earnest money was applied on the consideration, and Little paid the balance himself. It does not appear that Hawkinson ever objected to this use of the $1,000, and that fact strongly suggests that Little and Hawkinson were both interested as principals in the option contract. There is nothing to show that Wakefield and Nichols did not act in perfect good faith in allowing Little to take up the option. Wakefield testifies that before doing so he consulted legal counsel, and

was advised that under the circumstances Little had the right to purchase.

There are some circumstances which point to a different conclusion; but, when the evidence as a whole is considered, it is clear upon the showing made that the plaintiffs failed to prove that Hyslop was entitled to this land, and that the defendants should pay them a commission of $4,273 because they recognized Little's claim of right to carry out the Hawkinson option. Even if Little was not a principal, he was so situated with reference to the transaction that he probably had the right to insist upon carrying the deal through in his own name in order to protect his own profits.

The order is therefore reversed, and a new trial granted.